**Roger W. WHEELER, Jr., et al., Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**Northern Virginia Sun, Inc., Intervenor.**

**No. 20588.**

United States Court of Appeals District of Columbia Circuit.

Argued June 8, 1967.

Decided July 20, 1967.

Mr. Seymour J. Spelman, Washington, D. C., for petitioners.

Mr. Frank H. Itkin, Atty., N. L. R. B., of the bar of the Supreme Court of New Jersey, *pro hac vice*, by special leave of court, with whom Messrs. Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Warren M. Davison, Atty., N. L. R. B., were on the brief, for respondent.

Mr. Calvin H. Cobb, Jr., Washington, D. C., with whom Mr. William J. Butler, Washington, D. C., was on the brief, for intervenor.

Before WILBUR K. MILLER, Senior Circuit Judge, and DANAHER and TAMM, Circuit Judges.

TAMM, Circuit Judge:

In this, their third contest in this court, the petitioners continue to protest a ruling of the respondent National Labor Relations Board [1] which is adverse to their contention in behalf of re-employment rights violated in 1959 by the original intervenors George W. Ball, and others, who were trading as Northern Virginia Sun Publishing Company.[2] The present intervenor Northern Virginia Sun, Inc. is the latest in a series of purchasers of what had been the assets of the original intervenors George W. Ball, et al., having, as the Board now finds and as the petitioners concede, obtained the business as a bona fide purchaser under circumstances negating any suggestion that the present intervenor was either an "alter ego" for, a "disguised continuance" of, or had any "connection" with the initial and violating intervenors. Substantial evidence before the Board established that each of the original respondents had relinquished his control of the newspaper, and its ownership passed through a series of partnerships, joint ventures, and corporations, ending in 1962 with full ownership by ERS Corporation. ERS Corporation was the vendor in the bona fide sale of the newspaper to the present intervenor on February 4, 1963, a transaction in which the original respondents were not involved. Included in the contract of sale of the business from ERS Corporation to the present intervenor was a provision that the purchaser did not assume:

Any liabilities or obligations contracted or incurred by ERS or any predecessor of ERS as a result of or growing out of any violation of the National Labor Relations Act or any other applicable labor law, statute, or regulation.

A subsequent clause of the sales contract provided that ERS Corporation:

\* \* \* [W]ill indemnify Northern and hold it harmless from, against, and in respect of all liabilities \* \* \* not assumed or required to be assumed by Northern. \* \* \*

We are now asked to review a supplemental order of the Board, issued on June 27, 1966, pursuant to section 10(c) of the National Labor Relations Act, 29 U.S.C. § 160(c) (1965). Stripped of superfluous and wordy procedural charges, the

---

1. Wheeler v. N.L.R.B., 114 U.S.App.D.C 255, 314 F.2d 260 (1963); Northern Virginia Sun Publishing Co. v. N.L.R.B., 117 U.S.App.D.C. 357, 330 F.2d 231 (1964).

2. 159 N.L.R.B. No. 140.

precise challenge of petitioners is directed at the declination of the Board to order the present intervenor to reinstate those former employees of the original intervenors who were found by the Board to have been discriminatorily discharged between March 1 and March 10, 1959. Collaterally, it should be noted that in the period intervening since this case was last before us, petitioners—the original charging parties in all the proceedings before the Board and the ultimate beneficiaries of any rulings establishing their rights to back pay as a result of the original employers' unfair labor practices— reached an agreement with the initial employer-respondents for a settlement of the back pay differences. Under this settlement agreement, ERS Corporation, which was the intermediate owner of the business, undertook to pay a total sum of $30,000 plus attorneys' fees on behalf of the initial partners to the 38 named individual petitioners. Our petitioners, as their undertaking for this settlement, released both the employer-respondents and the ERS Corporation from all claims and demands for reinstatement and back pay and also released present intervenor Northern Virginia Sun, Inc. from all claims for back pay based upon any act of the respondent partners or ERS occurring prior to February 1963. This settlement agreement specifically provided, however, that it was entered into "without prejudice to the claims of the Charging Parties [our present petitioners] against the present owner Northern Virginia Sun, Inc. for reinstatement based upon the present owner's alleged status as successor."

The Board's June 27, 1966 order, here under challenge, noted that the settlement agreement fulfilled "all back pay liability for which the original Respondents may be liable in this proceeding," approved the settlement, but did not direct any further remedial action on the part of the original intervenors. In addition, however, the Board concluded (with one member dissenting) that: "In all of the circumstances of this case, we consider that *the purposes of the Act will be fully achieved* without the requirement of any further remedy by the present owner for the unfair labor practices of the original Respondents." [3] (Emphasis supplied.)

As a foundation for this conclusion, the Board found:

The unfair labor practices * * * were committed by the original respondents early in 1959. From 1960 through October 1962 each of the original respondents relinquished his control of the newspaper. * * * In February 1963, Northern Virginia Sun, Inc. purchased the newspaper from ERS Corp. It is undisputed that the present owner is a bona fide purchaser and not an *alter ego* of the original respondents, and that the sale was not an effort by the original respondents to avoid liability arising from the prior unfair labor practices. The original respondents were not involved in the sale of the newspaper and it is clear that there is a lack of privity between the original respondents and the present owner. Furthermore, * * * the present owner purchased the newspaper approximately 4 years after the unfair labor practices were committed; * * * the purchase agreement specifically provided that the purchaser did not assume any liability arising from the instant proceeding; and * * the union which represented the employees of the original respondents was subsequently certified as the collective-bargaining representative of the present owner's employees.

Insofar as petitioners now seek to have us reverse the Board's declination to require our present intervenor to re-employ them, we first treat of the basic question whether this action is within the Board's established power. We are of the view that with this case in its present posture the Board's action was within the author-

3 As previously set forth, this is the basis of petitioners' appeal, although the "Questions Presented" in their brief are expressed in terms of procedural and legal shortcomings.

ity delegated to it by section 10(c) of the Act, which empowers the Board after a finding of an unfair labor practice to take such affirmative action "as will effectuate the policies of the Act."

 The Board is allowed wide latitude in fashioning remedies. On this record we cannot say the Board exceeded permissible limits. *See also* Local 57, International Ladies Garment Workers Union AFL-CIO v. National Labor Relations Board, 126 U.S.App.D.C. 81, 374 F.2d 295, *cert. denied,* 387 U.S. 942, 87 S.Ct. 2078, 18 L.Ed.2d 1328 (1967).

We conclude, consequently, that in this case the evidence before the Board was completely adequate to justify the Board's action on the re-employment question, that the action taken was within the Board's authority, and that the record is completely devoid of any evidence whatsoever indicating that the Board's disposition of the challenged issue is not well-designed to effectuate the policies of the Act.

Petitioners, however, seeking to avoid the impact of the well-established principles outlined above, contend in substance that there is conflict between the findings of the trial examiner and the Board, that the evidence does not support the Board's action in overruling the trial examiner, that the Board ignored an argument which the examiner ruled should be addressed to the Board, and that the Board was influenced by the settlement agreement. Our review has satisfied us that the findings of the Board are not without substantial support in the record as a whole, and petitioners have failed to convince us of the merit of any of these contentions. Our ruling upon these points is, consequently, adverse to petitioners.

Petitioners have filed with the court copies of the Board's decision in a case entitled Perma Vinyl Corporation, 164 N.L.R.B. No. 119, issued on May 30, 1967, after the briefing schedule in our present case had been completed. In the *Perma*

*Vinyl* decision, the Board ordered the re-employment of discriminately discharged employees by a bona fide successor-employer. Petitioners here, in a reply brief and in oral argument, contend that the Board's action and the justification and explanation therefor set out in the Board's decision and order in *Perma Vinyl* are identical with the argument made by the present petitioners in their presentation of the re-employment question with reference to a bona fide successor-employer. To this argument, we of course point out that the Board's action in *Perma Vinyl* is not presently before us for review.[4] The thrust of petitioners' instant presentation of the *Perma Vinyl* case is that a new rule on the successorship liability issue in cases in which the bona fide purchaser of a business has an indemnification contract protecting him from loss imposed upon him by a Board's action as a successor was required by the Supreme Court's decision in John Wiley and Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1963). In failing, say petitioners, to articulate its reasons for rejecting petitioners' argument on the implications of the *Wiley* case, the Board deprived them of their right to seek judicial review of the Board's action as a violation of the *Wiley* doctrine. As heretofore pointed out, it is not for us at this time to express any views as to whether *Wiley* requires or justifies the Board's action in *Perma Vinyl.* We have again carefully reviewed the *Wiley* opinion and measured its doctrine against the Board's action in our present case. We find nothing in *Wiley* which is antagonistic to the Board's action in this case. We go further and observe that *Wiley* contemplated and permitted the result achieved herein by the Board. The Supreme Court's opinion in *Wiley* expresses condemnation of a merger "automatically" terminating all rights of employees covered by a labor agreement pre-existing the merger, 376 U.S. at 548, 84 S.Ct. 909. The Court ruled only that "in appropriate circum-

---

4. Apparently proceedings for judicial review of the *Perma Vinyl* decision are being initiated in the Fifth Circuit.

stances, *present* [in that case] the successor employer *may* be required to arbitrate * * *." (Id. at 548, 84 S.Ct. at 914.) (Emphasis supplied.)

Our conclusion is, then, that neither *Wiley* nor the Board's action in *Perma Vinyl* require—or even permit—reversal of the Board's action in our present case.

Affirmed.